VICENTE ZAYAS PIZARRO, Petitioner, *v.* PUERTO RICO PLAN-
NING, URBANIZING AND ZONING BOARD, Respondent.

No. 10.   Argued April 14, 1948.—Decided June 25, 1948.

28

Vicente Zayas Pizarro, pro se.    Rafael R. Fuertes, Félix Bello, and A. Sandín del Manzano, for respondent.

Mr. Chief Justice Travieso delivered the opinion of the Court.

The petitioner is the owner of a property known as "La Granja", which is urbanized in part, has an area of 31.93 acres (cuerdas), and is situated in the ward of "Pueblo," of the Municipality of Adjuntas.  Said property was partially urbanized in accordance with the plan drawn in January, 1928, on which each and all of the lots, streets, etc., covered by said urbanization were delineated, all this pursuant to the provisions of Act No. 69 of August 3, 1925. Said plan was approved on that same year by the Municipal Government of Adjuntas and by the Department of Health as to streets Nos. 1, 2, 3, and 4 delineated thereon.   No final

action was taken regarding street No. 6 of the urbanization project. On February 1, 1945, the petitioner filed with the Planning Board an application requesting that the urbanization be considered as ratified with respect to the four streets which had already been approved since 1928, and that the proper action be taken respecting that part of the urbanization project as to which no final determination had been made. Following several proceedings before the Board, the latter entered an order, dated August 7, 1947, wherein it, in short, decreed:

1. That the petitioner should file with the respondent Board a construction plan for street No. 6 of the urbanization project, as well as a topographical plan of the area affected by said street, the subdivider being bound to comply with the minimum requisites established by the Subdivision Regulations for a local street.

2. That the petitioner should proceed to provide streets Nos. 1, 2, 3, and 4 with the minimum facilities for streets, to wit, paved streets with asphalted surface provided with sidewalks, curbs, gutters, and also the corresponding individual connections for aqueduct, sewerage, and lighting services.

3. That the petitioner should make the corresponding transfer of open and park spaces, equivalent to 5 per cent of the new lots formed to be served by this new street, as well as the area of the street itself.

The petitioner requested a reconsideration of the above-mentioned order, and the latter was affirmed in all its parts on June 17, 1947. Both orders have given rise to the present proceeding for review.

■ It is urged that the Planning Board erred "in requiring the presentation by the petitioner of the construction plan of street No. 6 and a topographical plan of the area affected by said street" and "in requiring the establishment of minimum facilities for streets Nos. 1, 2, 3, and 4."

Although street No. 6 was included in the original urbanization plan of 1928, submitted by the petitioner, as a matter of fact it was never constructed, or accepted by the municipality, as were the remaining four streets. The Board has therefore authority to regulate its construction. See *Zayas* v. *Registrar*, 68 P.R.R. 39.

■ The petitioner argues that the circumstances of this case with respect to street No. 6 are out of the ordinary, to such a degree that they justify the application by the respondent Board of Articles 51 and 54 of Planning Regulations No. 3, because there are involved a street and an area of small extension which do not justify the expense incident to the preparation of construction and topographical plans, and because the widening of said street to 13 meters, when the remaining streets already urbanized are only 10 meters wide, would cause the lots already urbanized to be truncated and their areas altered. In support of this contention he cites the case of *Fortunet* v. *Planning Board*, 67 P.R.R. 245. The Articles mentioned above provide as follows:

"ARTICLE 51.—When it is shown to the Board that there are extraordinary hardships that do not permit full compliance with these Regulations, the Board may modify the application of any section or sections, as the case may be, provided the public welfare is not impaired."

"ARTICLE 54.—If in the judgment of the Planning Board any additional information required by these Regulations is considered unnecessary for a proper decision on any subdivision plats, the Board may disburden the subdivider from the presentation of such information."

We can not agree with the contention of the petitioner. Articles 51 and 54, *supra*, are applicable only when there are extraordinary hardships that do not permit full compliance with the Regulations. The existence of such hardships has not been shown to us. It has only been urged that if street No. 6 should be widened to 13 meters, this would cut off and alter the areas of the lots. The mere fact that the areas of lots are changed as a result of constructing a street in ac-

cordance with the Regulations promulgated by the Board, does not constitute an extraordinary hardship which compels said Board to apply the above-cited Articles. The case of *Fortunet* v. *Planning Board*, cited by the petitioner, is not applicable herein, because in said case the evidence showed that there were extraordinary circumstances which did not permit full compliance with the Regulations, due to the existence of certain permanent buildings, located within the boundaries of the lots, which it would have been necessary to demolish in order to widen the lots as required by the Board. In the case at bar there is nothing to show that the petitioner can not comply with the Regulations, and therefore we do not think that Articles 51 and 54, *supra*, should be applied.

██ As to the second part of this assignment, in which it is urged that error was committed in requiring the minimum facilities for streets Nos. 1, 2, 3, and 4, we agree with the petitioner, and we are of the opinion that the Board lacks power to impose that requisite. Said streets were urbanized and accepted as such by the Municipal Government of Adjuntas since the year 1928. From that time onward, the petitioner had no authority or control over said streets. This is shown by a certificate which forms part of the record and which was issued by the municipal secretary of the above-mentioned town in the year 1928, attesting that: "The Assembly unanimously agrees to accept and finally receive Attorney Zayas Pizarro's urbanization, situated in the ward of Pueblo, Adjuntas, eastern end of Rodulfo González Street, as to the four streets which he has already completed, which streets hereby become part of the town limits or urban zone in accordance with the law, and the interested party can now proceed to build such houses as he may deem proper on the said four streets, subject to the final approval of the Department of Health and to the obtention of the permits required by the laws and the regulations relating to such constructions." The record also contains an official letter, written by the Department of Health in the year 1928, which

in its pertinent part reads as follows: "After an inspection made by the Assistant Engineer, Mr. Oliver, of the lands of the urbanization owned by you, situated in the Municipality of Adjuntas, I am pleased to inform you that since streets Nos. 1, 2, 3, and 4 have been paved and constructed in accordance with the plans approved by the Department, the said streets are hereby accepted for the purpose of building thereon."

Both certificates show that said streets had been transferred to the Municipal Government of Adjuntas in the year 1928. Moreover, Act No. 69 of 1925, *supra*, pursuant to which the urbanization involved in this case was carried out, provides in its § 3 (p. 366) that:

"Section 3.—When such urbanization is finally approved by the Insular Government and the municipality it shall be understood that the same becomes part of the town, and the maintenance of the streets and other public services shall be in charge of and shall become the property of the municipality concerned."

That being so, the Board can not require the petitioner to provide pavements with asphalted surface, sidewalks, curbs, and gutters for those streets which had already been urbanized and transferred to the Municipality of Adjuntas at the time the Planning Act and Regulations took effect. See *Matos* v. *Planning Board*, 66 P.R.R. 417; *Rodríguez* v. *Registrar*, 66 P.R.R. 727; *Wilcox* v. *Registrar*, 67 P.R.R. 445. The Board, however, is empowered to order the subdivider to provide such connections as may be necessary to give aqueduct, sewerage, and lighting services to the lots located in said street, since those services are necessary for the health and well-being of the purchasers of the lots.

Lastly, the petitioner contends that the Board erred "in requiring the transfer for recreational purposes of not less than 5 per cent of the area to be subdivided, including the land for the streets."

Section 10 of Act No. 213 of 1942, known as the Puerto Rico Planning, Urbanizing and Zoning Act, as amended by

Act No. 475 of May 15, 1947,[1] provides in its pertinent part as follows:

". . . Such regulations may include in their provisions, . . . for *obligatory reservations* of a minimum area to be used for schools, parks, and other public purposes, and for the extent and manner in which these facilities shall be installed as a condition precedent to the approval of a plan. . . ."   (Italics ours.)

Pursuant to said Section, Article 37 of the Planning Regulations No. 3 was drafted, and it provides thus:

"ARTICLE 37.—Due consideration shall be given to the allocation of suitable areas for schools, parks and playgrounds.   At least five per cent (5 per cent), of the total area of every proposed subdivision, involving the establishment of a new street, or streets, *shall be reserved and dedicated* for recreational purposes. . ."   (Italics ours.)

The petitioner argues that this requirement is unconstitutional, since he is compelled to grant for public use a part of his property without any compensation, in contravention of the 9th paragraph of § 2 of our Organic Act, which expressly provides that:

"Private property shall not be taken or damaged for public use except upon payment of just compensation ascertained in the manner provided by law."

The respondent Board on the contrary maintains that it is empowered to demand such requisite because it is so authorized by the Planning Act and Regulations, *supra*, and that said Act and Regulations are constitutional, since the state may impose such requisite in the exercise of its police power. The Board further contends that the words "shall be reserved and dedicated," as used in the Act and Regulations, have the same meaning as, and are synonyms with, the term "transfer"

[1] Although Act No. 475 of May 15, 1947, did not become effective until 90 days after its approval, that is, after August 7, 1947, the date of the original decision of the Planning Board, it was in force on December 17, 1947, the date on which the Board denied the motion for reconsideration of the petitioner herein.

and that, therefore, the Act and the Regulations, in using said words, contemplate a transfer to the Government of the area to be dedicated to parks.

We think that the reservation of a certain amount of land to be dedicated to a park in an urbanization, is a necessary measure and primarily for the benefit of public health and safety, and that the Government, in the exercise of its police power, may require a subdivider to make such reservation. In this connection, in the case of *Municipality of San Lorenzo* v. *Planning Board*, 68 P.R.R. 600, we said:

"In several decisions, it has been held that the fact that an Act or regulation promulgated in the exercise of the police power prevents or restricts the enjoyment of certain individual rights over a property, without providing for the payment of compensation, does not necessarily render the Act or regulation unconstitutional on the ground that it violates the due process clause or condemns private property for public use without compensation. Those enactments, when they are reasonable and do not transcend the limits and purposes of the police power of the state, are not considered as taking private property for public use but as regulating the use and enjoyment of the property by its owner. If the latter suffers any prejudice, the same is *damnum absque injuria* or is considered as compensated by the share which the owner of the property will have in the benefits that the statute seeks to bestow upon the whole community."

■ However, the Board contends that not only may the owner of an urbanization be required to reserve .5 per cent of the area for park purposes, but that he may also be required to transfer to the Government the ownership of said area. Should there be any basis for this last contention in the statute or in the regulations, a serious constitutional question would then arise, which would involve the alleged taking of private property without due compensation. But it is not necessary for us to decide that question, since we do not find anything either in the statute or in the regulations—which should be construed, whenever possible, so as to

avoid serious constitutional questions—that affirmatively requires a transfer of the title over the park area from the owner to the Government.

■ In accordance with § 10 of Act No. 213 of 1942, *supra*, the Planning Board may require, as a condition precedent to the approval of an urbanization, that the owner thereof reserve a minimum area for schools, parks, and other public purposes. The 5 per cent reservation made by the owner of the urbanization for public parks, is not equivalent to, or synonymous with, the transfer of said 5 per cent to the People of Puerto Rico. The ownership title shall continue to be vested in the subdivider even if the use of the 5 per cent might be of a public character. In other words, if due to any cause—a fire, a hurricane, etc.—the urbanization were destroyed, the subdivider would continue to be the owner of any unsold lots and also of the reserved 5 per cent. Of course, if the owner voluntarily desires to transfer said 5 per cent to the Government for certain purposes, he may do so.

We have no doubt as to the power of the Board to require the petitioner herein to reserve for recreational purposes not less than 5 per cent of the area to be subdivided. Such a reservation, besides being authorized by the Act, is justified as a necessary measure for the health and well-being of the persons who are to live in the urbanization and of the community in general.

■ The order sought to be reviewed, in its dispositive part, reads thus:

"For the reasons stated, the Puerto Rico Planning, Urbanizing, and Zoning Board hereby RESOLVES to require the subdivider to file the construction plans for Street No. 6 and also the topographical plan of the area affected by this new street, *and a full compliance with the Subdivision Regulations, Articles 37 of which provides that at least 5 per cent of the area to be subdivided,* including the area of the streets, *shall be transferred for recreational purposes; . . .*" (Italics ours.)

It is not true that the above-cited Article 37 of the Regulations provides that the area reserved for recreational purposes should be transferred for public use, much less that such a transfer should be made without "payment of a just compensation fixed in the manner provided by law."

Counsel for the Board in his brief tells us that, after a search of the decisions of the various jurisdictions, he has been able to find only one case, *In Re Lake Secor Development Co.*, 141 Misc. 913, 252 N. Y. Supp. 809, in which the question under discussion is specifically dealt with. We have carefully studied that decision and we find that it does not hold that the Planning Board is legally authorized to compel the subdivider to transfer the space reserved for recreational purposes, without receiving adequate compensation. Our Act does not impose such an obligation on the subdivider.

■ We are aware of the practical problem that the Government may not be authorized to spend public funds for the establishment of parks on land to which it has no title. But that does not constitute justification for us to redraft the statute and the regulations so as to require a transfer of title. The statute and the regulations in their present form only require that the owner reserve, not that he transfer to the Government, a park area. Any order, like the one issued in this case, requiring a transfer of the title without compensation, besides raising a serious constitutional question, goes beyond the clear terms of the statute and of the regulations.

For the reasons stated we are of the opinion that the order under review should be modified in the following particulars:

1. By eliminating the condition imposed by the Board, to the effect that "to form and dispose of the lots Nos. 1, 2, 3, 4, and 5 served by streets Nos. 1, 3, and 4 and lots Nos. 14, 15, 16, 17, 18, 19, 20, and 21, served by streets Nos. 2, 3, and 4, they should be provided with the same minimum facilities, to wit: (1) streets paved with asphaltic surface provided

with sidewalks, curbs, gutters," since said streets became part of the urban zone of the Municipality of Adjuntas on March 31, 1928. The petitioner shall be bound to provide individual connections for aqueduct, sewerage, and lighting services for said lots.

2. By exempting the subdivider from the obligation to transfer for recreational purposes a tract of not less than 5 per cent of the area to be subdivided, he being bound to reserve said area for the indicated purposes.

And as thus modified, the order sought to be reviewed will be affirmed.

Mr. Justice De Jesús did not participate herein.